We have three cases this morning and the first is number 19-2633 Keaton v. Superintendent Greene SCI and we have Messrs. Egan and Hallie. Mr. Egan? Good morning your honor, your honors. Patrick Egan on behalf of Petitioner Alexander Appellant Alexander Keaton, I would request two minutes of rebuttal time be reserved. No problem at all. Thank you your honor. Your honor, we're here on two claims that have been made by the appellant. The first of those is that he was denied effective assistance of counsel by the failure of his trial counsel to present readily available character evidence. The Pennsylvania Supreme Court decision denying relief on this particular claim was contrary to and or involved an unreasonable application of clearly established law and was also based on an unreasonable determination of Which of the two issues do you do you wish to focus us on first? Well, I was going to focus on the character evidence first, your honor. However, No, that's fine, but you know the proposed witnesses are family, Keaton's family and friends. So they, you know, the thinking is that they often have a motive to testify in his favor. Their testimony is largely conclusory, and it's not very specific. And moreover, the two rape victims testified that Keaton violently assaulted them around the same time in the same neighborhood under similar conditions. So I wonder what character evidence have made any difference here. Yeah, your honor, I believe that in order to consider this claim properly, one has to take it in the context of Pennsylvania, which has a particularly strong favors particularly strongly character testimony. And in Pennsylvania, indeed, one is entitled to a jury instruction that character testimony alone can present a reasonable doubt. And I believe that the Pennsylvania Supreme Court essentially determined that trial counsel wasn't effective in failing to present this character testimony. But then the Pennsylvania Supreme Court essentially determined that there was no prejudice that was shown as a result. And we believe that that particular finding in itself was also incorrect. Okay, so we're on a difference, right? It's not just that it's wrong to Novo, but it has to involve an unreasonable application of clearly established federal law, right? Well, both an unreasonable application of federally established law, but also the they missed got they got the facts wrong. And if you look at the record, and they got the facts wrong in the record, that also is, is reviewable by this court. But again, that's an unreasonable determination of the facts in light of the evidence. It's not the Novo. That is correct. Now, I had some of Judge Ambrose reaction, because when you look at the four witnesses, one of them, his sister said, we'd hardly see him, he was living in the street, wouldn't want to be around him when he's high. Another sister says he just wasn't himself when he was high. So that's at best two edged swords there, if his own sisters are going to say that, and then you've got the aunt's testimony is not going to be admissible, because she hasn't seen him, she's going to testify what he was like as a child and young adult. And then you've got the childhood friend who only saw him occasionally. So I'm not sure that aunt or the childhood friend's testimony would be admissible. And then the sisters look like it might be positively harmful. What's your response to that? Well, two things, Your Honor. Number one, the testimony that's available to us is testimony that was taken not at trial guilt phase, but at the capital phase. So the testimony as it comes from the transcripts is an entirely different line of questioning. And the line of questioning wasn't developed in the way that it could have been and should have if it was presented properly in a guilt phase. So what's your proffer as to what would have been developed? Were you barred from developing those facts in the state court? Well, there was never a hearing of these witnesses as to exactly what they would have testified to had they been called in the guilt phase. Well, there was was Why are we allowed to develop any more facts than were developed in the state court on this? I'm not suggesting that we should develop more facts. What I'm suggesting is the Supreme Court lifting that testimony out of the context of the penalty phase unreasonably applied the law to those facts, because had that testimony been developed appropriately in the guilt phase, that testimony would have shown that all four of those witnesses were competent witnesses, and that all four of those witnesses or at least three of the four would have testified to his character for peacefulness and nonviolence at the time of these offense, which three not the end. Correct. Okay, one who hasn't seen him in 10 years, I would concede. How is it an unreasonable application? Let's focus on the two sisters. If the two sisters. Are you saying they wouldn't have testified that he wasn't himself when he was high? You wouldn't want to be around him? I mean, because it's hard to find prejudice or to say it's unreasonable to find prejudice if they're going to say if his own sisters are going to say negative things like that about him. Well, that certainly would have been for the Commonwealth to draw out on cross examination. However, their testimony and direct examination, especially the way it's in the Pennsylvania courts for a character witness is very limited in terms of scope. And it's essentially do you know other people in the community and know him? Do you know him? And do the among those people, what is his reputation for peacefulness and nonviolence? And they would have testified it was good as the affidavits clearly set forth. Generally, if defense counsel tries to go outside those four walls, they're stopped by the objection of the prosecution on their point. There's no reason that the Pennsylvania Supreme Court can't consider what would have come out on cross as well in adjudicating prejudice, except that some of that cross may not have been admissible. Number one. And number two, what they're doing is they're inserting their judgment. Basically, without looking at all of the facts, they're inserting their judgment for what should have been a determination made by a jury. And just to go back to what Judge Ambrose referenced, the two victims, those two victims, while they did indeed testify as they did at trial, that in those cases as well, there was no physical evidence. In this case, the only thing tying Keaton to the decedent is his own statement, which is largely exculpatory. While he says he was with her and they had sex and that they were high, he said she was alive when he left. And number two, his statements with regard to the rest of the events are largely exculpatory. So you have zero, you have no forensic evidence. You have a medical examiner report, which is rife with inconsistencies and which should have been. And if we get to point two, the testimony was available and could have been raised that would have undercut that. Before we leave the prejudice point, do you have a basis for asserting that the bad parts of the sister's testimony would not, it was unreasonable to think that they would be admissible? If focusing in specifically on that testimony, it would have had to have been what reputation, what his reputation was. But if he opens the door, do you have Pennsylvania authority that would have been admissible if he opened the door by putting on this stuff on direct? It would not have opened the door by putting this stuff on undirect because under Pennsylvania law at the time, what what trial counsel, the mistake trial counsel made was he assumed that this testimony could come in. But clearly, individual acts of wrongful acts are not admissible as cross clear. Scott had said that if there was no, if there was an arrest, but no conviction, it was not admissible for cross examination. It logically flows from that, that if there's not even an arrest, it wouldn't be admissible. If it wasn't clear, how can we say it was? But actually Fawcett Commonwealth versus Fawcett was superior court case from 1982, which predates this case had specifically stated and superior court law does apply to the common police courts of Pennsylvania has stated that if there was no arrest, that if there was that you could not cross examine on this type of behavior. So, it comes out of concern, they should have filed a motion to eliminate. But would it not be proper cross examination on the testimony that you have proposed that this reputation in the community is just based on whether he's on drugs or not? If it pertains to violence and nonviolence, it would be appropriate. If it pertains to whether it truthfulness, it wouldn't be. Yeah, right. But violence, nonviolence and, wouldn't that let the whole thing out? And wouldn't that, in this situation, be a very obvious tack for the prosecutor to take on cross examination? It certainly would. But I think the focus here, if I may, the focus here should be on the fact that what the Pennsylvania Supreme Court did was an outcome determinative view of the case. And this is clearly a Strickland case because you have ineffective assistance of counsel. And the ineffective assistance of counsel under Strickland is not an outcome determinative case. And what the Pennsylvania Supreme Court said was, well, we look at all this stuff and it would have been the same. So, therefore, it doesn't count. But that's not the Strickland standard. And that's where the Pennsylvania Supreme Court erred. Could you turn to the second issue, if you would, whether trial counsel's failure to present an alternative explanation on the basis of a report for the death was ineffective assistance? Yes. Thank you, Your Honor. The fact of the matter is, is what we are seeking here is an evidentiary hearing in the district court. Obviously, we admit that this issue was defaulted in the state court. And therefore, we are only entitled to an evidentiary hearing or hearing if under Schlup, we can show that there is potential of actual innocence. So, the question is really whether a hearing should have been held in the district court to determine whether a hearing on reliability should take place. Dr. Arden's report, which has been proffered to the court, establishes probable innocence for certain. It is consistent with an accidental death. It clearly shows that the testimony upon which the conviction relied was medically unsound, and that it's more plausible that the death was accidental. Mr. Egan, isn't that all premised on the defendant's own version of the facts? This didn't involve any independent investigation of what happened. It's just if this all happened, as he said, then there could have been suffocation. But there was no examination of the body or anything else by this doctor. Well, they did review the medical examiner's report and the testimony, and they did determine that that testimony was medically unsound, particularly as it pertained to certain issues having to do with the knot that was tied around the throat and the way that the evidence was handled. And it calls into question the only rehashing what Dr. Preston had testified to at trial. Not rehashing so much as questioning, but that's why we need an evidentiary hearing, so that Dr. Arden can testify more fully about exactly what the determination was with regard to the cause of death in this case. Mr. Egan, the SHLUP standard is extraordinarily high. It has to be no reasonable jury could have convicted beyond a reasonable doubt based on this. But again, if this is a rehash and it's predicated on the defendant's own version of the facts, SHLUP rarely succeeds. It's usually a DNA-type evidence or something equally compelling. I can supplement that. I think that Keaton already presented the idea of a sex game theory to the jury at trial. It's very difficult for me to see how Dr. Arden's report, even if it were admitted, would change the jury's mind. Well, first of all, again, the evidence that was presented by the prosecution was Keaton's statement, which is largely exculpatory, and this medical examiner report. Basically, that's about all they had with regard specifically to this murder. They had the prejudicial effect of the testimony regarding the other two rapes, admittedly. The existence of conflicting evidence supports the need for a hearing. In this case, the Arden testimony would be conflicting evidence on the critical linchpin to the conviction. Therefore, at a minimum, the district court should have permitted a hearing in this matter. All right. Why don't we hear from Mr. Howley, and we'll get you back in rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honors. Benjamin Howley for the respondents. Regarding a few points made by counsel just now, it's clear that this character of testimony that's been offered as demonstrating the Pennsylvania Supreme Court in Reasonably Applied Strickland, it's clear that it will not establish prejudice. We have overwhelming evidence of guilt here. Beyond the circumstances of the victims discovering how she was found, found alone, shoeless amongst debris, her leg still lifted up by the ligature around her neck. If we look at also the testimony of the two other rape victims for whom he was convicted of raping by the same jury, counsel pointed out that there was no forensic testimony or forensic evidence beyond their direct testimony concerning the rapes. And I would respectfully disagree. One point with the victim's name was Michelle B. She testified that she was penetrated by both a glass bottle and a tree branch, both of which were later found by police at the scene, and both tested positively for sperm. I don't think that's consistent with consensual sex. And even so, Keaton, the petitioner, gave a statement to police in which he claimed to only have had oral sex with the victim, which is inconsistent with vaginal penetration, as well as positive tests on tree branch and the wine bottle. Let me ask on the second issue. There was filed a 28-J letter noting a recent decision in Howe about requiring an evidentiary hearing to evaluate the Shluck innocence claim. To what extent is Howe on point or not on point? I don't think Howe is on point, Your Honor, because it specifically dealt with recantation evidence, where the fundamental basis of the allegations presented by the prosecution were rebutted or contradicted in the way that it couldn't happen that way. Here, all we have is a report saying, well, it's not necessarily true, but there could be another reason. But as this court stated in Wright, even in Goldbloom, that evidence to a reasonable degree of medical certainty does not meet the standard of demonstrating no reasonable juror would have found guilt. While you're dealing with recantation evidence, it disproves the commonwealth's allegations. Here, we just have evidence of reasonable doubt, not actual innocence. But under Shluck, in an unhabeas review, the petitioner doesn't enjoy the presumption of innocence. Raising a reasonable doubt doesn't suffice. You actually have to disprove that the allegations at trial could have possibly happened in one way. Here, we just have another possible way it could have happened, similar to Goldbloom, Arden, or Albrecht and Wright, where there's another possible way it could have happened, but that possible way it couldn't have happened doesn't exclude the commonwealth's allegations. Where in Howell, it was specifically recantation. Now, you presented some evidence about a few other alleged crimes, such as the murder of Patricia Stewart and the rape of four other women. Did the trial jury ever hear this evidence? The jury did not hear the evidence of Patricia Stewart or the other four rape victims because at the time, he had been arrested for these crimes, but he hadn't been convicted yet. But Patricia Stewart, regarding the petitioner's first claim, he wasn't arrested for the murder of Patricia Stewart. Therefore, it was admissible to cross-examine character witnesses if they've been presented. And I would respectfully disagree with petitioner's reliance on Fawcett. Fawcett did not hold that prior criminal conduct, not resulting in arrest, was inadmissible for impeaching character witnesses. That specific case dealt with whether the allegations of simple assault pertained to the relevant character trait of truthfulness presented by the character witnesses at Fawcett's trial. It never held that prior criminal conduct, not resulting in arrest, wasn't admissible. Therefore, any extrapolation to that effect and the effect of Scott was merely dicta, and the U.S. Supreme Court has never held that counsel being held ineffective for failing to be aware of dicta. And I would also refer to this Pennsylvania Supreme Court's decision in Paterkin, which obviously is controlling over Fawcett. And Paterkin said, specifically mentioned that the evidence there did not result in arrest and therefore was admissible to impeach character witnesses. All right. Thank you. Judge Peebus, any questions? None further. No. Judge Ross? Nothing further. Yeah. I don't have any further questions as well. Anything you want to suggest to sum up? No, Your Honor. I'll rest. All right. Thank you very much. Mr. Regan, we'll get you back on rebuttal. Thank you, Your Honor. Briefly, I'd just like to respond to two points. While Fawcett can certainly be read in more than one way with regard to the determination, it wasn't the only case out there at the time. And clearly, the failure of trial counsel to just assumption that he couldn't present this evidence without at least having a motion to effective assistance. And it was clear from the other precedent at the time where the law was going in this case. So that's my response to the Fawcett issue. With regard to the second issue, it's not in terms of having an evidentiary hearing to determine whether the evidence that's proffered pursuant to Shlup would be sufficient. That is something that needs to be fleshed out the district court. And it will be appropriate for this court to remand to the district court for a hearing because Dr. Arden's testimony would indeed, could indeed raise the specter that no reasonable juror would find the defendant guilty under these facts. Thank you very much. Mr. Regan, I understand you took this case as pro bono. Is that correct? Yes, Your Honor. Well, thank you very much. Usually what we see a major firm sending a young associate. So it's a pleasure seeing somebody of somewhat comparable age to me to do this and do it in such a fine way. Well, thank you. It's certainly a privilege to be before the court. No, thank you. It's a privilege to have you and thanks to your firm as well. We'll take them out under advisement and call our next case.